SUSAN M. CHEHARDY, Chief Judge.
| {.Plaintiff, Apex Building Technologies Group, Inc., appeals the district court’s July 16, 2013 judgment sustaining the peremptory excéption of prescription, dismissing with prejudice Apex’s claims against defendant, Hanover Insurance Company, *1211 and ordering the cancellation of Apex’s recorded privilege from the Jefferson Parish mortgage records. Apex also appeals the district court’s March 12, 2015 judgment granting summary judgment in favor of defendant, Jefferson Parish, and dismissing with prejudice'' Apex’s claims against the Parish. For the reasons that follow, we decline review of the court’s July 16, 2013 judgment due to lack of jurisdiction and affirm the court’s March 12,2015 judgment. ■
FACTS AND PROCEDURAL HISTORY
Jefferson Parish contracted with Cateo General Contractors,- LLC, to construct a public works project, the “New East Bank Maintenance Facility” in .Jefferson, Louisiana. This contract was dated September 22, 2009 and was | .¡recorded in the Jefferson Parish mortgage records on September 24, 2009.. Hanover issued the performance and payment bonds on the project.
Cateo subcontracted with Apex to supply the electrical work on the project. This subcontract was also dated September 22, 2009. Following the completion of its work, Apex claimed that a balance of $39,186.19 remained unpaid under the subcontract. So, on April 8,2011, Apex filed a claim and privilege in the Jefferson Parish mortgage records.
On January 25, 2012, the Jefferson Parish Council adopted a resolution granting acceptance of the project. This resolution was recorded in the Jefferson Parish mortgage records on March 15,2012.
On April 12,2013, Apex filed suit against Cateo and Hanover to recover the alleged unpaid balance. Hanover pleaded the peremptory exception of prescription and/or peremption, arguing, that Apex’s petition had been untimely filed. The district court agreed and sustained the exception, dismissing with prejudice Apex’s claims against Hanover. In the written judgment that followed on July 16, 2013, the court further ordered the cancellation of Apex’s recorded privilege in the mortgage records. This cancellation took effect on August 1, 2013.
Meanwhile, on June 6, 2013, Apex filed an amended petition, naming Jefferson Parish as a defendant and alleging the Parish was liable for the unpaid balance. In response, the Parish pleaded the dilatory exception of prematurity and the peremptory exceptions of no right of action, no cause of action, and prescription and/or peremption.
The court sustained the Parish’s exceptions of prematurity and no right of action, and overruled the exceptions of prescription and/or peremption and no cause of action, ordering Apex to amend its petition to state a cause of action. In its subsequent amended petition, filed on December 26, 2013, Apex added a Rconcursus claim. Apex then moved for summary judgment, which the district court denied on September 8, 2014. Thereafter, the Parish moved for summary judgment, which the district court granted on March 12, 2015, dismissing Apex’s claims against the Parish with' prejudice. Apex moved for a devolutive appeal “from the final judgment signed on March 12, 2015, granting summary judgment in favor of defendant, The Parish of Jefferson, dismissing the. petition and claim of Apex Building Technologies, Inc.” The district court granted Apex’s appeal.
ASSIGNMENTS OF ERROR
On appeal, Apex submits two assignments of error: (1) the district court erred, in its July 16, 2013 judgment ordering the cancellation of Apex’s privilege; and (2) the district court erred in its March 12, 2015 judgment granting summary judgment in favor of Jefferson Parish.
*1212 DISCUSSION

Assignment of Error Number One

In its first assignment of error, Apex argues that even if its action against' Hanover had prescribed, this does not compel the cancellation of its recorded privilege. Jefferson Parish responds that this Court is without jurisdiction to review the district court’s July 16, 2013 ruling because Apex did not appeal this final judgment.
A judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841. Unless otherwise expressly provided by law, only final judgments are appealable. La. C.C.P. art. 2083. A judgment is final, and thus ap-pealable, that “[dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.” La. C.C.P. art. 1915(A)(1).
|fiHere, in its judgment of July 16, 2013, the district court sustained Hanover’s peremptory exception of prescription, dismissed with prejudice Apex’s claims against Hanover, and ordered the cancellation of Apex’s recorded privilege. Because this judgment dismissed a named defendant from the suit, this was a final judgment under La. C.C.P. art. 1915(A)(1). To receive appellate review of this judgment, Apex was required to perfect its appeal within the specified legal delays. Apex did not seek an appeal from this judgment. As a result, we are without jurisdiction to review the district court’s judgment of July 16,2013. See Hancock Bank of La. v. 3429 H, LLC, 15-355 (La.App. 5 Cir. 1/13/16), 184 So.3d 274 (“An appellant’s failure to file a devolutive appeal timely is a jurisdictional defect in that neither the court of appeal nor any other court has the jurisdictional power and authority to reverse, revise, or modify a final judgment after the time for filing a devolutive appeal has lapsed.”). Accordingly, we do not consider Apex’s first assignments error.

Assignment of Error Number Two

In its second assignment of error, Apex argues the district court erred in granting .the Parish’s motion for summary judgment. Apex contends that the Parish was not entitled to summary judgment since the Parish is liable to Apex for breaching its statutory obligations under La. R.S. 38:2242(D) and La. R.S. 38:2243.
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis. Richthofen v. Medina, 14-294 (La.App. 5 Cir. 10/29/14), 164 So.3d 231, 234, writ denied, 14-2514 (La.3/13/15), 161 So.3d 639. Accordingly, this Court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Id.
LThe Louisiana Public Works Act is mi generis and provides exclusive remedies to parties in public construction work. State v. McInnis Bros. Constr., 97-0742 (La.10/21/97), 701 So.2d 937, 944. The law was enacted for the purpose of protecting persons doing work, performing labor, or furnishing material for the construction, alteration, or repair of public works. Construction Materials, Inc. v. American Fidelity Fire Ins. Co., 388 So.2d 365, 366 (La.1980). This protection is necessary because, unlike their counterparts in private construction projects, workers and suppliers engaged by a public authority cannot protect themselves with liens against public property since liens are unenforceable against public property.[1] See *1213 Elec. Supply Co. v. Great Am. Ins. Co., 42,727 (La.App. 2 Cir. 12/12/07), 973 So.2d 827, 828. To this end, in public works contracts exceeding $25,000,-the Louisiana Public Works Act generally requires contractors to furnish two bonds: a performance bond and a payment bond.[2] See La. R.S. 38:2216; La. R.S. 38:2241.[3]
The performance bond must be furnished in all public works contracts “for the faithful performance of [the contractor’s] duties ” La. R.S. 38:2216(A)(1). This bond “exists for the benefit of the public authority and in essence creates a ‘privilege’ or a source of funds available to the State should it-be successful in a suit against the- general contractor and the surety under La. R.S. 38:2189.” McInnis Bros., supra.
The payment bond must be furnished in public works contracts exceeding $25,000 “for the payment by the contractor or subcontractor to claimants.” La. R.S. 38:2241(A)(1). This bond serves to ensure “that those who perform work on |7public projects receive payment for their work in the event of a contractor’s inability to fulfill its payment obligations.” Glencoe Educ. Found., Inc. v. Clerk of Court, 10-1872 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, 231, writ denied, 11-1142 (La.10/21/11), 73 So.3d 383. This bond essentially “transfers the risk that a contractor will be unable to perform its contractual obligations from the public entity to the surety.” Id.
In order to secure a right of action on the payment bond, a claimant[4] must, “after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor,' file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.” La. R.S; 38:2242(B); La. R.S. 38:2247. ' This filing does not grant a “lien”[5] on thé public work itself, but grants the claimant a privilege against the unexpended fund in-the possession of the public authority. Wilkin, 561 So.2d at 70. It “preserves the claimant’s statutory privilege whereby he is entitled to payment from the governing authority in preference to any payment due by the authority to the general contractor.” Id. at 75 (Gole, J., concurring in part, dissenting in part). Once the notice and recordation requirements of La. R.S. 38:2242(B) are satisfied, the claimant has “one year from the registry of acceptance of the work or of notice of default of the contractor” to bring the action on the bond “against the surety or contractor or both[.]” La. R.S. 38:2247.
*1214 IsHere, the. Parish’s . acceptance of the project was recorded on March 15, 2012. Therefore, Apex had one year from that date, or until March 15, 2013, to bring its action against Hanover or Cateo or both. Apex filed suit on April 12, 2013, prompting the district court to properly conclude that Apex’s action on the payment bond was prescribed under La. R.S. 38:2247.
. With its action on the payment bond prescribed, Apex sought to recover directly from the Parish, articulating theories of recovery under La. R.S. 38:2242(D) and La. R.S. 38:2243. In the Parish’s .motion for summary judgment, the Parish argued it was entitled to judgment as a matter of law because: the Public Works Act does not afford Apex a remedy, against the Parish; Apex cannot succeed on a claim under La. R.S. 38:2242(D); and La. R.S. 38:2243 does not afford Apex a cause of action against the Parish.
While the Louisiana Public Works Act envisions unpaid claimants obtaining redress primarily on the payment bond, the Act nonetheless does permit a claimant to recover from the public authority under narrow circumstances. “If the public authority has complied with the requirements of the Public Works Act and the requisite bonds have been issued, it may escape liability to ... claimants by filing a bond of a surety ‘to guarantee payment of the obligation secured by the privilege.’'” Glencoe Educ. Found., Inc. v. Clerk of Court, 10-1872 (La.App. 1 Cir. 5/6/11), 65 So.3d 225, 231, writ denied, 11-1142 (La.10/21/11), 73 So.3d 383 (quoting La. R.S. 38:2242.2(A)). However, the public authority becomes subject to liability when it' fails to take the steps necessary “to guarantee payment of the obligation secured by the privilege.” La. R.S. 38:2242(D) delineates the two conditions under which a public authority shall be so liable: (1) if “an awarding authority makes final payment to. the contractor without deducting the total amount of all outstanding claims so served on it”; or (2) if “an awarding authority makes final |9payment to the contractor ... without obtaining a bond from the contractor to cover the total amount of all outstanding claims])]”[6]
The Parish argues it is not liable únder this provision because the prerequisite in both conditions is not satisfied: the Parish made no final payment to the contractor, Cateo. A review of the record confirms this. The Parish issued payment to Hanover, the surety. As a result, without issuing payment to the contractor, neither of the two conditions necessary to subject the Parish to liability under La. R.S. 38:2242(D) can be satisfied. In addition, a claimant’s recovery under Subsection D is premised upon the existence of a recorded privilege. Apex no longer has a recorded privilege. For this reason too, Apex cannot satisfy either of the two conditions under La. R.S. 38:2242(D). Accordingly, Apex cannot succeed against the Parish under La. R.S. 38:2242(D).
Apex’s other theory of recovery relies on La. R.S. 38:2243, which sets forth the con-cursus procedure for resolving unpaid filed and recorded claims. Subsection A provides:
If at the expiration of the forty-five days any filed and recorded claims are unpaid,- the public entity shall file a petition in the proper court of the parish where the work was done, citing all claimants *1215 and the contractor, subcontractor, and surety on the bond and asserting whatever claims it has against any of them, and shall require the claimants to assert their claims. If the governing authority fails to file the proceeding any claimant may do so.
Apex contends that a public authority’s failure to initiate the concursus proceeding mandated by this Section subjects the authority to liability. To the contrary, La. R.S. 38:2243(A) expressly provides the consequence of a public authority’s failure to initiate a concursus proceeding: “any claimant may do so.” It Imdoes not subject the public authority to liability. Accordingly, La. R.S. 38:2243 does not afford Apex a cause of action against the Parish for failing to initiate a concursus proceeding. Moreover, similar to the relief sought under La. R.S. 38:2242(D), any recovery sought by a claimant in concursus is contingent upon a recorded privilege. Here too, Apex’s lack of a recorded privilege precludesrelief. •
Upon our rife novo review, we find Apex has no basis for relief against Jefferson Parish under' the exclusive remedies of the Public Works Act. Therefore, Jefferson Parish was entitled to judgment as a matter of law and the district court did not err in granting summary judgment in favor of the Parish. This assignment of error is without merit.,
DECREE
' For the foregoing reasons, we affirm the district court’s judgment of March 12, 2015.

AFFIRMED

. The Private Works Act, La. R.S. 9:4801, et seq., grants certain laborers and suppliers *1213 liens on private construction work. Wilkin v. Dev. Con Builders, Inc., 561 So.2d 66, 67, n. 1 (La.1990).

. This is subject to specified exceptions, which are. not pertinent here. See, e.g., La. R.S. 38:2216(1).

. Public works contracts entered into by the Louisiana Department of Transportation and Development are governed by separate provisions. See La. R.S. 48:250, et seq.

. A “claimant” is defined in pertinent part as "any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works[.]” See La. R.S. 38:2242(A).

."Although the rights granted to laborers and suppliers under public contract law are sometimes referred to as ‘liens,’ these claimants are not really entitled to a lien on the public works themselves.” Wilkin, 561 So.2d at 67, n. 1. "In lieu of a lien, the public contract law grants certain claimants a privilege against the unexpended funds in the hands of the public authority.” Id.

. La. R.S. 38:2242(D) provides:
When an awarding authority makes final payment to the. contractor without deducting the total amount of all outstanding claims so served on it or without obtaining a bond from the contractor to cover the total amount of all outstanding claims, the awarding authority shall become liable for the amount of these claims.